UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**PATRICK JAMES WERNER,**

                Plaintiff,

v.                                     **Case No. 15-cv-114-pp**

**EDWARD F. WALL,**

                Defendant.

---

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DKT. NO. 2), GRANTING PLAINTIFF'S MOTION TO WAIVE INITIAL PARTIAL FILING FEE (DKT. NO. 4), DENYING AS MOOT PLAINTIFF'S MOTION TO HAVE DEFENDANTS SERVED THROUGH PACER (DKT. NO. 5), DENYING PLAINTIFF'S MOTION TO PUBLISH ALL DECISIONS (DKT. NO. 8), GRANTING PLAINTIFF'S REQUEST TO SCREEN COMPLAINT (DKT. NO. 11), AND SCREENING PLAINTIFF'S COMPLAINT**

---

Patrick James Werner, a state prisoner currently incarcerated at the Oshkosh Correctional Institution, filed a *pro se* complaint under 42 U.S.C. §1983, alleging violations of his civil rights. This order resolves the plaintiff's motion for leave to proceed *in forma pauperis*, the plaintiff's motion to waive the initial partial filing fee, the plaintiff's motion to have defendants served through PACER, the plaintiff's motion to publish all decisions, and the plaintiff's request that the court screen his complaint, as well as screening the complaint.

**I.    MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS**

The Prison Litigation Reform Act applies to this action because the plaintiff was incarcerated when he filed his complaint. 28 U.S.C. §1915. That law allows a court to give an incarcerated plaintiff the ability to proceed with

1

his lawsuit without pre-paying the civil case-filing fee, as long as he meets certain conditions. One of those conditions is a requirement that the plaintiff pay an initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, the court may allow the plaintiff to pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On January 30, 2015, the court issued an order requiring the plaintiff to pay an initial partial filing fee of $10.16. Dkt. No. 6. Prior to that date, however, the plaintiff already had filed a motion to waive the initial partial filing fee. Dkt. No. 4. In the motion, the plaintiff details both his earnings and the many deductions that the prison takes from this prison trust account, leaving him without a remainder to pay his initial partial filing fee. "In no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has not assets and no means by which to pay the initial partial filing fee." 28 U.S.C. § 1915(b)(4). The court will grant the plaintiff's motion to waive the initial partial filing fee and grant the plaintiff's motion for leave to proceed without pre-paying the filing fee. The court will allow the plaintiff to pay the $350.00 filing fee over time from his prisoner account, as described at the end of this order.

## II.   SCREENING OF THE PLAINTIFF'S COMPLAINT

### A.   Standard for Screening Complaints

The law requires the court to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint or portion

2

thereof if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous "'when it lacks an arguable basis either in law or in fact.'" Denton v. Hernandez, 504 U.S. 25, 31 (1992), quoting Neitzke v. Williams, 490 U.S. 319, 325 (1989). See also Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is "based on an indisputably meritless legal theory" or where the factual contentions are clearly "baseless." Neitzke, 490 U.S. at 327. "Malicious," although "sometimes treated as a synonym for 'frivolous,' . . . is more usefully construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (internal citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). A plaintiff does not need to plead specific facts, and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." Id. (quoting Twombly, 550 U.S. at 570). "A claim has

3

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts follow the principles set forth in Twombly. First, they must "identify[] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Iqbal, 556 U.S. at 679. A plaintiff must support legal conclusions with factual allegations. Id. Second, if there are well-pleaded factual allegations, courts must "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that the defendants: 1) deprived him of a right secured by the Constitution or laws of the United States; and 2) acted under color of state law. Buchanan-Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009) (citing Kramer v. Vill. of N. Fond du Lac, 384 F.3d 856, 861 (7th Cir. 2004)); see also Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B.　Facts Alleged in the Complaint

The complaint indicates that on August 23, 1999, he was sentenced to serve ten years in prison for sexual assault of a child, to be served consecutively to a two-year sentence imposed in another case. Dkt. No. 1 at 4. He also was sentenced to a term of ten years of probation for child enticement-sexual contact, to run consecutively to the ten years of incarceration. Id. The plaintiff completed the ten-year prison term, began to serve the ten-year probation term, and then was revoked "for **ONLY** rule violations, of which **NONE** were new crimes." Id. (emphasis in the original).

In his fourteen-page, single-spaced complaint, the plaintiff makes numerous assertions. It appears, as best the court can tell, that he is challenging three of his supervision rules. The first one requires him to comply with Wis. Stat. §301.45(2)(a)(6m). Id. at 4. Section 301.45 is the sex offender registration statute. This particular subsection indicates that the Department of Corrections must include, as part of the information it keeps in the registry, all e-mail addresses and accounts and Internet addresses and accounts of registered sex offenders. The other two rules the plaintiff challenges are, "You shall not purchase, possess, nor use a computer, software, hardware, nor modem without prior agent approval," and "you shall not have in your possession or utilize a cell phone or other electronic device that has Internet capacity." Dkt. No. 1 at 5.

He argues that he did not use a computer "in the commission of his present or past criminality." Id. at 4. He claims he has no record of abusing

5

digital or electronic communications (despite having, prior to his incarceration, run his own company, which required him to use a computer constantly). Id.

The plaintiff alleges that while he was incarcerated on his original sentence, he wrote to numerous individuals, trying to find out why he was subject to these restrictions, but that he did not receive replies or satisfactory explanations. Id. at 5-6. He indicates that while he was serving his probationary term, he was revoked for having a Facebook page, even though he was unable to delete the page (created in 2009) because he no longer had the e-mail account that he used to open it. Id. at 6. He also alleges that he was revoked for creating a page on Google+. Id. The plaintiff suggests that after he is released from his current incarceration, he may always be subject to revocation because of his inability to delete that page. Id.

The plaintiff reviews the policy reasons for bans on computer, Internet, and social media use, and he highlights how other jurisdictions and courts have addressed the issue. Id. at 6-7. The plaintiff also mentions that agents have been confused over the years regarding the scope of his rules of supervision and regarding the details of his crime. Id. at 7.

The plaintiff brings his sworn complaint against Wisconsin Department of Corrections (DOC) Secretary Edward Wall in his individual and official capacity. Id. at 3.

C.  Legal Analysis of Alleged Facts

The plaintiff makes arguments regarding the ripeness of his claims and suggests that his claims may arise under the Americans with Disabilities Act,

6

the First Amendment, the Fourth Amendment, the Fourteenth Amendment (equal protection, procedural due process, and substantive due process), and that Ex Post Facto clause. Id. at 8-9.

To the extent the plaintiff is challenging the revocation of the ten-year probation term imposed in State v. Werner, 99CF16,[1] the court must dismiss the claims; the proper procedural mechanism by which to challenge probation rules or restrictions is a collateral attack in a petition for a writ of habeas corpus. This is because supervision restrictions "define the perimeters of [his] confinement." Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003) (quoting Drollinger v. Milligan, 552 F.2d 1220, 1224-25 (7th Cir. 1977)). "Thus, eliminating or changing one of the restrictions would alter the confinement." Williams, 336 F.3d at 580. "[F]iguratively speaking, one of the 'bars' would be removed from [his] cell." Drollinger, 552 F.2d at 1225.

> For prisoners, the difference between a civil rights action and a collateral attack is easy to describe. Challenges to conditions of confinement (such as pollution in the prison or deliberate indifference to serious medical needs) fall under § 1983. Preiser v. Rodriguez, 411 U.S. 475, 500, 98 S. Ct. 1827, 36 L.Ed.2d 439 (1973). Attacks on the fact or duration of the confinement come under § 2254. Id.; Moran v. Sondalle, 218 F.3d 647, 650-51 (7th Cir. 2000) (per curiam). For parolees, the question is more metaphysical, because the "conditions" of parole *are* the confinement. Requirements that parolees stay in touch with their parole officer, hold down a job, steer clear of criminals, or (as in Williams's case) obtain permission for any proposed travel outside the jurisdiction, are what distinguish parole from freedom.

---

[1] It is not clear when the plaintiff's probation was revoked. He indicates that he was released from his original custodial term on November 16, 2012 (Dkt. No. 1 at 4); presumably the revocation took place sometime after that date.

7

> It is because of these restrictions that parolees remain "in custody" on their unexpired sentences and thus may initiate a collateral attack while on parole. See Jones v. Cunningham, 371 U.S. 236, 242-43, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963); see also Maleng v. Cook, 490 U.S. 488, 491, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989) (per curiam).

Williams, 336 F.3d at 579.

For these reasons, the court will not allow the plaintiff to proceed on any claims which attack the revocation of his probation.

To the extent the plaintiff seeks to challenge the possibility that he might be revoked in the future, his claims are not "ripe" for adjudication." The ripeness doctrine "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 200, 103 S. Ct. 1713 (1983) (citation omitted). "Ripeness concerns may arise when a case involves uncertain or contingent events that may not occur as anticipated, or not occur at all." Wisconsin Right to Life State Political Action Comm. v. Barland, 664 F.3d 139, 148 (7th Cir. 2011).

"To determine whether a case is ripe for adjudication, a court must determine 'first, whether the relevant issues are sufficiently focused so as to permit judicial resolution without further factual development; and second, whether the parties would suffer any hardship by the postponement of judicial

8

action.'" Buquer v. City of Indianapolis, 797 F. Supp.2d 905, 916-17 (S.D. Ind. 2011)(quoting Triple G Landfills, Inc. v. Bd. of Comm'rs of Fountain Cnty., Ind., 977 F.2d 287, 289 (7th Cir. 1992)).

The plaintiff's claims do not meet this test. His claims do not permit judicial resolution without further factual development, because it is not clear when the plaintiff will be released, or whether, at the time he is released, these particular rules will apply to him. He cites a probation condition that indicates he can't have certain devices without his supervising agent's approval; because he is not on probation at this time, there is no way to know whether his future supervising agent will give that approval. Only when he is released and placed on supervision will it become clear whether he will try to obtain or possess one of the devices for which he needs approval, and whether his supervising agent will give that approval. More to the point, the plaintiff has not demonstrated that he would suffer hardship if the court does not decide his claims now. Again, the plaintiff does not indicate when he will be released, although in another case before this court, he indicated that he was due to be released in 2023. If that is the case, it will be eight years before the issues the plaintiff raises become ripe.

The plaintiff argues that his claims are ripe now because they constitute a "pre-enforcement challenge." The notion of pre-enforcement challenges to the constitutionality of a particular statute arises in the context of standing.

> A person need not risk arrest before bringing a pre-enforcement challenge . . ., but to present a justiciable controversy, the person must assert more than a wholly speculative possibility of

> criminal consequences. A plaintiff must show that she has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder."

Schirmer v. Nagode, 621 F.3d 581, 586 (7th Cir. 2010) (citations omitted).

The plaintiff has not demonstrated that he has an intention to engage in any statutorily prohibited course of conduct, nor has he demonstrated that that course of conduct is "affected with a constitutional interest." Id. The complaint references Wis. Stat. § 301.45(2)(a)(6m), which requires that all sex offenders must provide:

> The name or number of every electronic mail account the person uses, the Internet address of every Web site the person creates or maintains, every Internet user name the person uses, and the name and Internet address of every public or private Internet profile the person creates, uses, or maintains. The department may not place the information provided under this subdivision on any registry that the public may view but shall maintain the information in its records on the person. This subdivision applies only to an account, Web site, Internet address, or Internet profile the person creates, uses, or maintains for his or her personal, family, or household use.

But this statute does not prohibit him from doing anything, nor does it threaten him with prosecution for doing anything. The court also notes that the plaintiff has not sought injunctive relief; he asks only for compensatory damages, costs and fees.

Ultimately, the plaintiff is asking the court to speculate about how he will be affected by conditions of probation to which he may be subject in the future.

10

Accordingly, the court will dismiss the plaintiff's complaint without prejudice because the plaintiff's claims are not ripe.

## III. PLAINTIFF'S OTHER MOTIONS

The plaintiff has filed three other motions. He asks to have the defendants receive filings through PACER. Dkt. No. 5. Because all of the court's screening orders state that the defendants will receive electronic notice of documents plaintiffs file with the court, this motion is unnecessary, and the court will deny it as moot.

The plaintiff also asks the court to publish all decisions. Dkt. No. 8. He bases this request on his characterization of this case as a class action (although he has not filed a Rule 23 class certification motion, and this court has not certified a class). He suggests there is a large group of individuals who would be impacted by the court's decision in this case, and argues that published decisions would make it easier to communicate information and to recruit additional plaintiffs.

First, the court does not have final control over which decisions are published and which are not. Publication services, such as Thompson West, search court databases, and often publish cases even when the court has not designated the decision or order as publishable. Second, a court does not base its decision regarding whether to publish on the desires of an individual plaintiff. Every judge decides, for him or herself, whether a particular decision contributes to the jurisprudence in a particular area, such that its publication might be relevant to the public. The court will treat this case no differently. It

11

will decide whether to publish this decision in the same way that it decides that question in all other cases. The court will deny this motion.

Finally, the plaintiff filed a request that the court screen his (several) cases. Dkt. No. 11. The court grants that request to the extent that it issues this screening order.

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed *in forma pauperis.* Dkt. No. 2. The court also **GRANTS** the plaintiff's motion to waive the initial partial filing fee. Dkt. No. 4. The court **ORDERS** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $350.00 balance of the filing fee by collecting monthly payments from plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The Secretary of the Wisconsin Department of Corrections or his designee shall clearly identify the payments by the case name and number assigned to this action.

The court **DENIES AS MOOT** the plaintiff's motion to have defendants receive filings through Pacer. Dkt. No. 5. The court also **DENIES** the plaintiff's motion to publish all decisions. Dkt. No. 8. The court **GRANTS** the plaintiff's motion to have the court screen his complaint. Dkt. No. 11.

The court **DISMISSES WITHOUT PREJUDICE** the plaintiff's complaint for lack of ripeness.

The clerk of court of will enter judgment accordingly and mail a copy to the warden of the institution where the plaintiff is confined.

Dated at Milwaukee this 18th day of September, 2015.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge